STATE OF IOWA, appellant, v. W. L. HAESEMEYER, appellee.

No. 49024

(Reported in 79 N.W.2d 755)

156

DECEMBER 11, 1956.

Dayton Countryman, Attorney General, Raphael R. R.

Dvorak, Assistant Attorney General, Charles King, of Marshall-town, County Attorney, and J. D. Robertson, of Marshalltown, Special Prosecutor, for appellant.

Donnelly, Lynch, Lynch & Dallas, of Cedar Rapids, and John L. Mowry, of Marshalltown, for appellee.

GARFIELD, J.—Defendant, president and active executive officer of a state bank, was acquitted of embezzlement in the claimed violation of section 528.6, Codes, 1950, 1954. The State has appealed and contends some of the instructions to the jury were erroneous.

I. The judgment is a finality with respect to the discharge of defendant. However, we will entertain an appeal by the State where it presents questions of law the determination of which will be beneficial or a guide to trial courts in the future. See Code section 793.20; State v. Hill, 244 Iowa 405, 407, 57 N.W.2d 58, 59, and citations. We think this appeal presents such questions.

II. The indictment as amended reads: "The grand jury of the county of Marshall * * * accuse W. L. Haesemeyer of the crime of excessive loans to an officer committed as follows: The said W. L. Haesemeyer on the 10th day of October, 1951, in the county aforesaid, and while acting as president of the Central State Bank, State Center, Iowa, did use or borrow for himself, directly or indirectly, money belonging to said * * * bank * * * in the amount of $45,000; * * * being in excess of ten per cent of the capital and surplus of said bank without such loan first being approved, in writing, by a majority of the board of directors of said bank. In violation of Section 528.6, Code of Iowa (1954)."

Code section 528.6 provides: "Loans to officers or employees —use of funds. No officer * * * of the bank shall in any manner directly or indirectly use its funds or deposits or any part thereof, except for the regular business transactions of the bank, and no loans shall be made by it to any of them except upon express order of the board of directors, made in the absence of the applicant, duly entered in the records of the board proceedings * * *.

"No active executive officer of any state bank, * * * shall

use or borrow for himself, directly or indirectly, any money * * * belonging to any state bank * * * of which he is an officer, in excess of ten per cent of the capital and surplus of such bank * * *.

"Where loans are made to such active executive officers they must first be approved by a majority of the board of directors, said approval to be in writing and the active executive officer to whom said loans are made, not voting. * * *.

"Provided, if any such active executive officer shall own a majority of the stock of any other corporation a loan to that corporation shall be considered for the purpose of this section as a loan to him."

Section 528.7 says "Any such officer * * * violating any of the provisions of section[s] * * * 528.6 shall be guilty of embezzlement" and punished as therein stated. Evidently because of this provision the court, in its instructions to the jury, construed the indictment as charging embezzlement rather than "the crime of excessive loans to an officer" as the indictment states. No complaint is made of this and we give it no further attention.

Instruction 6 states in effect that the only part of section 528.6 applicable to the case is the provision in the second paragraph thereof: "No active executive officer of any state bank * * * shall use or borrow for himself, directly or indirectly, any money * * * belonging to any state bank * * * of which he is an officer, in excess of ten per cent of the capital and surplus of such bank; * * *."

The State objected to instruction 6 on the ground the jury should also have been instructed as to the first prohibition section 528.6 contains and the requirement thereof that loans made to active executive officers must first be approved by a majority of the board of directors. The indictment alleges the loan defendant made to himself was without such board approval.

We are clear the court's failure to instruct with regard to this requirement of section 528.6 was proper and did not prejudice the State in any way. Defendant was accused of borrowing for himself $45,000 of the bank's money, being in excess of ten per cent of the capital and surplus. The loan was represented by a promissory note for that amount, signed by Martin Schaper, payable to the bank. It is the same note referred to in

State v. Haesemeyer, 247 Iowa 1159, 78 N.W.2d 36. The bank's capital and surplus totaled $175,000. Obviously the loan far exceeded ten per cent thereof.

The part of section 528.6 submitted to the jury is an absolute prohibition against an active executive officer's borrowing from the bank an amount in excess of ten per cent of the capital and surplus. The directors have no authority to approve such an excess loan. The requirement of 528.6 that loans to such officers must first be approved by the board of directors plainly applies only to loans not absolutely prohibited—i.e., loans not in excess of ten per cent of the capital and surplus. The approval requirement of 528.6 has no application here and the court properly ignored it in its instructions. See Browning v. State, 101 Fla. 1051, 133 So. 847, 849; People v. Lewis, 262 Mich. 308, 247 N.W. 154.

The first prohibition of section 528.6 which the State contends should have been submitted to the jury is, "No officer * * * of the bank shall in any manner directly or indirectly use its funds or deposits or any part thereof, except for the regular business transactions of the bank * * *." There is substantial evidence of a violation of this provision. However, we think it was proper not to submit such question to the jury because defendant was not charged with a violation of this prohibition but only with having violated the part of section 528.6 instruction 6 submitted to the jury.

There is nothing in the indictment as returned or as amended which charges defendant used the bank's funds or deposits for a purpose other than the regular business transactions of the bank. While the indictment charges a violation of 528.6, the means and manner of such violation are expressly stated—i.e., that defendant used or borrowed for himself, directly or indirectly, $45,000 of the bank's money, being in excess of ten per cent of the capital and surplus. As previously explained, the indictment designates the crime as "excessive loans to an officer."

It may be the State was not required to allege the means by which the offense was committed. Code section 773.10. But having done so, it had the burden to prove defendant's guilt substantially as alleged. State v. Schuling, 216 Iowa 1425, 250 N.W.

588; State v. Essex, 217 Iowa 157, 250 N.W. 895; Wright v. People, 104 Colo. 335, 91 P.2d 499, 123 A.L.R. 474, 477.

42 C.J.S., Indictments and Informations, section 262, states: "Where an offense may be committed in various ways, the evidence must establish it to have been committed in the mode charged in the indictment."

The State filed a bill of particulars and supplemental bill of particulars before it amended the indictment. See Code section 773.5. Later the State filed another supplemental bill of particulars and amendment thereto containing in all twenty-six numbered paragraphs. Paragraph 23 does state the funds of the bank were not used as a regular business transaction of the bank because defendant had a beneficial interest in the proceeds of the $45,000 note, although it was signed by Martin Schaper, and for other reasons.

The State seems to feel the bill of particulars should be considered part of the indictment or an amendment thereto. But we think it is not to be so treated. The bill did not change or enlarge the offense charged in the indictment. Wright v. People, supra, 104 Colo. 335, 91 P.2d 499, 123 A.L.R. 474, 477, and citations; People v. Johnson, 363 Ill. 45, 1 N.E.2d 386, 388; Commonwealth v. Sacco, 255 Mass. 369, 151 N.E. 839; State v. Greer, 238 N.C. 325, 77 S.E.2d 917, 922; State v. Davis, 39 R.I. 276, 97 A. 818, Ann. Cas. 1918C 563, 568, 569; 27 Am. Jur., Indictments and Informations, sections 112, 117; 42 C.J.S., Indictments and Informations, section 156d, pages 1101-2.

In support of its contention the jury should have been instructed on the first prohibition section 528.6 contains, the State cites State v. Stack, 221 Iowa 727, 266 N.W. 523; State v. Wilbourn, 219 Iowa 120, 257 N.W. 571; State v. Johnson, 212 Iowa 1197, 237 N.W. 522. We find nothing in these precedents contrary to the views herein expressed.

State v. Stack, supra, upholds the sufficiency on demurrer of an indictment which charged breaking and entering a store at a certain location in Dubuque in violation of what is now Code section 708.8, although it did not allege the breaking and entering were "with intent to commit any public offense." Had the indictment charged the breaking and entering were with intent to commit larceny we think Stack could not have been convicted

on proof he intended to commit rape, although either would be a violation of section 708.8. We need not analyze other decisions the State cites on this phase of the case.

If the indictment here had merely charged a violation of section 528.6 without specifying the means by which it was committed, the State might be in better position to urge the contention now considered. However, we do not mean to imply defendant would not then be entitled to a bill of particulars if he requested it. Code section 773.5; annotation 5 A.L.R.2d 444.

III. The State assigns error in giving the first paragraph of instruction 15 which told the jury that if the $45,000 was loaned to a partnership known as Aurora Cattle Account then defendant did not, within the meaning of section 528.6, use or borrow for himself, directly or indirectly, any money belonging to the bank because then the use and borrowing was by a partnership which was a separate entity and not by defendant himself. Instruction 11 states in effect that on the day the $45,000 note was made a partnership existed under the name Aurora Cattle Account and defendant and Martin Schaper (whose name was signed to the note) were the members thereof.

The second paragraph of instruction 15 told the jury that if, on the other hand, defendant utilized Schaper as a mere intermediary to enable defendant to use or borrow the $45,000 from the bank and if the loan was in fact made to defendant and Schaper jointly to enable them both to use the funds for themselves then it should find defendant indirectly used or borrowed money belonging to the bank.

Although defendant did not testify, it is apparent his defense to the crime charged has been that the loan was made to a partnership composed of himself and Schaper and in Iowa a partnership is regarded as an entity distinct from its members.

We have held several times that a partnership is an entity distinct from its members. Among such decisions are: Rubio Sav. Bk. v. Acme Farm Prod. Co., 240 Iowa 547, 556, 37 N.W.2d 16, 21, 9 A.L.R.2d 459; Soursos v. Mason City, 230 Iowa 157, 158, 296 N.W. 807, 808 ("This is too well settled to require discussion.") ; Bankers Trust Co. v. Knee, 222 Iowa 988, 993, 270 N.W. 438; State v. Pierson, 204 Iowa 837, 842, 216 N.W. 43, 46; Jensen v. Wiersma, 185 Iowa 551, 552, 170 N.W. 780, 4 A.L.R.

298; National Sewer Pipe Co. v. Smith-Jaycox Lbr. Co., 183 Iowa 17, 20, 166 N.W. 708.

There seems to be a growing tendency of courts to adopt the view which has long prevailed in Iowa that a partnership is a legal entity distinct from its members. 40 Am. Jur., Partnership, section 18.

Since section 528.6 is a criminal statute it is to be strictly construed. However, it should not be construed so strictly as to defeat the obvious intention of the legislature. State v. Hill, 244 Iowa 405, 407, 408, 57 N.W.2d 58, 59, and citations; State v. Hansen, 244 Iowa 145, 147, 55 N.W.2d 923, 924, and citations; State v. Dahnke, 244 Iowa 599, 602, 603, 57 N.W.2d 553, 555; 7 Am. Jur., Banks, section 367; 9 C.J.S., Banks and Banking, section 148a, page 279.

7 Am. Jur., Banks, section 368, states: "In the absence of a statute expressly controlling the matter, whether a loan which cannot lawfully be made to an officer or director of a bank may be made to a partnership of which the officer or director is a member depends upon whether the partnership is regarded as a legal entity distinct from the members composing it. If the partnership is regarded as a legal entity a loan may be lawfully made to it. If the partnership is not regarded as an entity, the officers permitting or approving of such loan are criminally liable. In some jurisdictions statutes have been enacted expressly regulating the making of loans to a partnership in which a director or officer of the bank is interested."

Substantially the same statement is found in annotation 90 A.L.R. 509, 512. State v. Pielsticker, 118 Neb. 419, 225 N.W. 51, 53, holds a statute similar to our section 528.6 does not prohibit borrowing from a bank by a partnership of which the bank officer is a member, since a partnership is an entity distinct from its members.

People v. Knapp, 206 N. Y. 373, 376, 99 N.E. 841, 843, Ann. Cas. 1914B 243, holds an excess loan to a partnership of which the banker is a member is an indirect loan to the banker. The opinion points out a partnership is not regarded as an entity in New York. Further, the New York statute prohibited such excess "'loans to any person, company, corporation or firm.'" Thus it would seem the loan in question was a clear violation of

the statute regardless of whether or not a partnership is considered an entity.

We have considered the other precedents the State cites. Several of them do not involve the question whether a loan to a partnership of which the banker is a member is a violation of a statute like section 528.6. Some of them are not criminal cases and are governed in part by common-law principles. Some courts whose decisions are cited do not regard a partnership as a distinct entity. This is true at least of Texas and Utah although not of Oklahoma. In several of the cases cited at least part of the money borrowed from the bank was used by the banker personally and the loan was made in the name of a third person as a mere subterfuge.

Since we regard a partnership as an entity we are not persuaded the first paragraph of instruction 15 is an erroneous statement of law. It may well be that defendant's conduct was morally indefensible. Perhaps the statute should be enlarged to prohibit a loan to a partnership of which the banker is a member. If so this should be done by the legislature and not by us under the guise of construction.

Of course if a partnership or other third party is used as a subterfuge for the purpose of borrowing from a bank money which is in reality for an officer of the bank, there is an indirect borrowing by him. The authorities seem to agree upon this proposition and defendant concedes as much. The second paragraph of instruction 15 embodies this thought.

The conclusion we have reached finds some support in the last sentence of section 528.6, before quoted, and in section 528.14. The former provision is: "if any such active executive officer shall own a majority of the stock of any other corporation a loan to that corporation shall be considered for the purpose of this section as a loan to him." Thus the legislature expressly prohibited excess loans to a corporation in which the banker owns a majority of the stock. But it did not so prohibit such loans to a partnership of which he is a member. The effect of sustaining the State's complaint against instruction 15 would be to read into the language just quoted, following "other corporation", the language "or be a member of a partnership" and, following "that corporation", the words "or partnership."

Section 528.14 is too long to set out in full. It limits the permissible liabilities to any "bank of any person, corporation, company, or firm for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof * * *." The section contains two other references to liabilities of any person, corporation, company or firm and one provision regarding certain obligations "of any person, copartnership, association, or corporation * * *."

Section 528.6 which defendant was charged with violating contains no language like that in 528.14. It is clear from this latter section the legislature was familiar with such terms as company, firm and copartnership. It seems to have recognized a distinction between loans to an individual and loans to a firm or partnership. It is reasonable to conclude that if the lawmakers intended by section 528.6 to prohibit excess loans to a partnership of which an active executive officer of the bank was a member it would have used appropriate language to express such intent. See State v. Pielsticker, supra, 118 Neb. 419, 225 N.W. 51, 53.

■ In seeking the meaning of section 528.6 in the respect in controversy it is proper to consider all of that statute and also 528.14. Board of Trustees of Farmers Drain. Dist. v. Iowa Natural Resources Council, 247 Iowa 1244, 1250, 78 N.W.2d 798, 802, and citations.

■ IV. The State complains of the instructions as a whole, especially numbers 10 to 15 inclusive, as unduly emphasizing the defense that defendant was a member of a partnership composed of himself and Schaper and that the $45,000 loan was made to the partnership rather than to defendant.

We think the complaint has merit. We shall not analyze in detail these instructions. Suffice to say that in three instructions the jury was told no less than five times in all that a partnership is a legal entity distinct from its members, and this thought was enlarged upon. The jury was expressly told twice and indirectly told at least twice that a borrowing by a partnership is not a direct or indirect borrowing by a member thereof. While the instructions emphasize at least by repetition defendant's claim the loan was to a partnership, the jury was told but once (in the

second paragraph of No. 15) that if in fact the loan was made to defendant and Schaper jointly there would be a violation of statute.

Instruction 14 informed the jury "The fact to be determined is who borrowed the money—the partnership or Schaper individually." This clearly implies that either the partnership or Schaper borrowed the $45,000, thereby ruling out the State's contention, which has substantial support in the evidence, that as a matter of fact defendant and Schaper were the real borrowers.

 We have frequently pointed out that instructions should not give undue emphasis to any particular phase of the case favorable to either side; and correct statements of the law, if repeated to the point of such undue emphasis, may constitute reversible error. See Evans v. Holsinger, 242 Iowa 990, 999, 1000, 48 N.W.2d 250, 255, 28 A.L.R.2d 1434; State v. Williams, 238 Iowa 838, 845, 28 N.W.2d 514, 519; State v. Proost, 225 Iowa 628, 635–637, 281 N.W. 167; Vance v. Grohe, 223 Iowa 1109, 1118, 274 N.W. 902, 116 A.L.R. 332; Kelly v. Chicago, R. I. & P. Ry. Co., 138 Iowa 273, 277, 114 N.W. 536, 128 Am. St. Rep. 195; 88 C.J.S., Trial, section 340a; 53 Am. Jur., Trial, section 568. See also Soreide v. Vilas & Co., 247 Iowa 1139, 1151, 78 N.W.2d 41, 48.

V. Instruction 11 told the jury that on the date the $45,000 loan was made a partnership existed between defendant and Schaper (whose name was signed to the note). The State contends existence of the partnership was a disputed fact question which should have been left to the jury to determine. There is a good deal of evidence that defendant denied to bank examiners there was ever any partnership between him and Schaper.

 The legal proposition for which the State contends is of course elementary. Instructions must not state or assume a fact exists when the matter is in dispute. It is the province of juries, not courts, to decide disputed fact questions in jury trials. State v. Hubbard, 218 Iowa 239, 241, 250 N.W. 891, 253 N.W. 834; State v. Dunne, 234 Iowa 1185, 1188–1191, 15 N.W.2d 296, 298, 299; 88 C.J.S., Trial, section 280a; 53 Am. Jur., Trial, section 605. See also State v. Cotton, 240 Iowa 609, 639, 33 N.W.2d 880, 896, 897.

We think, however, the State is not in position to make this complaint against instruction 11. The first bill of particulars it filed alleges that on the date of the $45,000 loan a partnership existed composed of defendant and Schaper. Since the State made this allegation the court was justified in telling the jury the partnership existed. This would seem to follow from the rule that an allegation binds the one who makes it. Reynolds v. Aller, 226 Iowa 642, 648, 284 N.W. 825, and citations; Lauman v. Dearmin, 246 Iowa 697, 706, 69 N.W.2d 49, 54.

Also in point are decisions to the effect specifications in a bill of particulars restrict the proof to the matters specified. State v. Schuling, supra, 216 Iowa 1425, 1428, 250 N.W. 588; Commonwealth v. Albert, 307 Mass. 239, 29 N.E.2d 817, 819, and citations; Commonwealth v. American News Co., 333 Mass. 74, 127 N.E.2d 661, 663; annotation 10 A.L.R. 982, 983; 27 Am. Jur., Indictments and Informations, section 112; 42 C.J.S., Indictments and Informations, section 156d, page 1103.

The State assigns another error but we deem it unnecessary upon this appeal to pass upon the assignment.

For the error pointed out in Division IV hereof the judgment is reversed but the cause is not remanded.—Reversed.

BLISS, OLIVER, SMITH, LARSON, and PETERSON, JJ., concur.

HAYS, J., THOMPSON, C. J., and WENNERSTRUM, J., concur in part and dissent in part.

HAYS, J. (dissenting)—I agree with the legal announcements made in Divisions I, II and III. I would refuse to pass upon the error assigned in Division IV as not presenting a legal question the determination of which would be beneficial or a guide to trial courts in the future. Even if passed upon I do not feel it warrants a reversal. I would affirm.

THOMPSON, C. J., and WENNERSTRUM, J., join in this dissent.